Submitted on record and briefs December 3, 2004, affirmed on Polk County's petition; 1000 Friends of Oregon's petition dismissed May 18, 2005

POLK COUNTY,
*Petitioner,*

*v.*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT
and Kathy Thole,
*Respondents.*

1000 FRIENDS OF OREGON,
*Petitioner,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
*Respondent.*

03-WKTASK-001541; A122385 (Control), A122732
(Cases Consolidated)

112 P3d 409

David Doyle filed the briefs for petitioner Polk County.

Mary Kyle McCurdy filed the briefs for petitioner 1000 Friends of Oregon.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, filed the brief for respondents Department of Land Conservation and Development and Land Conservation and Development Commission.

Respondents George Thole (deceased) and Kathy Thole filed the brief *pro se*.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

Petitioners Polk County and 1000 Friends of Oregon seek review of a Land Conservation and Development Commission (LCDC) order addressing a "work task" assigned to the county as part of a periodic review of county ordinances under ORS 197.628 to 197.636.[1] LCDC's order required Polk County to justify an exception to Statewide Land Use Planning Goal 3 and to take additional action under the provisions of an LCDC administrative rule regarding an area that the county sought to designate as an Urban Unincorporated Community.

Polk County and 1000 Friends seek review of LCDC's order on separate and distinct grounds. Polk County asserts that LCDC failed properly to construe and apply ORS 197.654, which provides for collaborative regional problem-solving (RPS) in land use planning activities involving more than one planning jurisdiction. Polk County and certain other jurisdictions were part of an RPS process, but some of the parties, including Yamhill County, withdrew from the process. As a consequence, LCDC concluded that the RPS process was no longer available as a means of complying with Polk County's periodic ordinance review obligations. Polk County assigns error to that conclusion.

1000 Friends does not challenge LCDC's construction and application of the RPS statutes; instead, it asserts that LCDC erroneously applied a portion of its "Unincorporated Communities Rule," OAR 660-022-0030(7), by allowing ineligible land to be included in an unincorporated community. 1000 Friends also asserts that LCDC's order was not supported by substantial evidence.

Invoking *Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003), Polk County filed a motion to dismiss 1000 Friends' petition on the

---

[1] "Periodic review" is a statutorily mandated review of local comprehensive plans and implementing ordinances for compliance with the Statewide Land Use Planning Goals. *See* ORS 197.628 to 197.636. It includes "work tasks" that direct particular actions on the part of local planning jurisdictions to bring their land use planning regulations into compliance with the goals. The LCDC order on review addressed Polk County's performance under such a work task.

ground that it lacks constitutional standing to challenge LCDC's order because "the record does not demonstrate that the decision below has or will have a practical effect on 1000 Friends' rights." In *Utsey*, this court held that, "regardless of what the legislature provides regarding the standing of litigants to obtain judicial relief, the courts *always* must determine that the constitutional requirements of justiciability are satisfied." *Id.* at 548 (emphasis in original). Specifically, the court reasoned that (1) the party that invokes the jurisdiction of the court has the "obligation to establish the justiciability of its claim," *id.* at 549; (2) to establish that the claim is justiciable, the party "must demonstrate that a decision in this case will have a practical effect on its rights," *id.* at 550; and (3) "[t]he case law concerning the 'practical effects' requirement clearly states that an abstract interest in the proper application of the law is not sufficient," *id.* Under that standard, 1000 Friends must demonstrate that a decision will have a practical effect on its rights.

1000 Friends' petition for judicial review states that its mission includes the "protection of Oregon's quality of life through the conservation of farm and forest lands, the protection of natural and historic resources, and the promotion of more compact and livable cities." 1000 Friends asserts that its "corporate and organizational interests are adversely affected" by LCDC's order because, if the order becomes effective, the unincorporated community boundaries of Grand Ronde, Fort Hill, and Valley Junction will encroach on rural lands, thereby creating a sprawling development pattern. That pattern, according to 1000 Friends, will threaten rural, farm, and forest lands and will have a detrimental effect on the closest incorporated city, Willamina.

■ We conclude that 1000 Friends' showing is inadequate to establish a practical effect under the standard articulated in *Utsey*. In that case, the organization that sought standing, the League of Women Voters of Coos County,

> "submitted a letter to the county in opposition to the Lillies' application. The letter did not identify what the League is, nor did it provide any explanation of the League's interest in the application. It simply stated that the League opposed the application on the ground that approval would be unlawful. When the Lillies appealed to LUBA, the League

moved to intervene. Once again, the League did not explain what it is or the nature of its interest in the application or how it would be affected by a decision on it one way or the other. The motion merely stated the fact of the League's appearance before the county. On appeal, the League provides no additional information concerning its composition, its interest in the application, or any practical effect that a decision would have on its rights. It simply cites ORS 197.850(1) and ORS 197.830(2) and (7) and contends that the legislature's conferral of statutory standing on any person without regard to any practical interest in the outcome suffices to create a justiciable controversy."

*Utsey*, 176 Or App at 548-49. We concluded that the League's showing was insufficient to establish a practical effect on it.

By contrast, in *WaterWatch v. Water Resources Commission*, 193 Or App 87, 97-98, 88 P3d 327, *rev allowed*, 337 Or 476 (2004), we concluded that the petitioner had asserted a sufficient practical effect to invoke our jurisdiction. In that case, the organization showed that it was

"instrumental in the drafting and passage of the Oregon Instream Water Rights Act in 1987 and that it has invested significant time, effort, and money in establishing instream water rights throughout the state. Significantly, and more importantly in this case, WaterWatch has spent time, effort, and money in advocating for the creation of an instream water right in Tenmile Creek. As discussed above, WaterWatch asserts that the commission's order approving the permit in this case will harm WaterWatch by significantly diminishing its investment in the creation of an instream water right in Tenmile Creek. Specifically, WaterWatch explains that the permit that the commission approved in this case will have an earlier priority date than any instream right; thus, the instream right would be subject to [the permit applicant's] use of water."

*Id.* at 97. We concluded:

"For those reasons, WaterWatch has identified plausible, actual, concrete ramifications from the commission's approval of [the applicant's] permit. Of particular significance, WaterWatch has been involved in proceedings to support the establishment of an instream water right for Tenmile Creek, the specific waterway at issue in the permit approved in the commission's order. Those interests

asserted by WaterWatch are not simply academic or abstract political or policy beliefs. We conclude that WaterWatch established, for purposes of constitutional justiciability requirements, that the issuance of the permit has sufficient practical effects on it as an organization."

*Id.* at 97-98.[2]

Although 1000 Friends' showing in this case better explains its organizational goals and the nature of its dissatisfaction with the challenged order than did the League of Women Voters in *Utsey*, that showing nonetheless expresses only philosophical and political disagreement with LCDC's decision. Unlike the petitioner in *WaterWatch*, 1000 Friends has not identified any "plausible, actual, concrete ramifications" to its interests from LCDC's order. In short, 1000 Friends has not asserted that it or its members have suffered or will suffer a practical effect as a result of the order. We therefore grant the motion to dismiss 1000 Friends' petition for review.

■    We turn to Polk County's challenge to LCDC's order. Polk County asserts that LCDC's rejection of its right to continued participation in the RPS was the result of an erroneous interpretation of the statutory scheme. Our review, therefore, begins with the relevant statutes.

ORS 197.654 provides:

"(1)    Local governments and those special districts that provide urban services may enter into a collaborative regional problem-solving process. A collaborative regional problem-solving process is a planning process directed toward resolution of land use problems in a region. The process must offer an opportunity to participate with appropriate state agencies and all local governments within the region affected by the problems that are the subject of the problem-solving process. The process must include:

"(a)    An opportunity for involvement by other stakeholders with an interest in the problem; and

---

[2] The petitioner in *WaterWatch* also asserted standing based on the interests of its members. We concluded that it had demonstrated that approval of the challenged permit would have practical effects on some of its members. 1000 Friends makes no similar claim here.

"(b)   Efforts among the collaborators to agree on goals, objectives and measures of success for steps undertaken to implement the process as set forth in ORS 197.656.

"(2)   As used in ORS 197.652 to 197.658, 'region' means an area of one or more counties, together with the cities within the county, counties, or affected portion of the county."

Participation in collaborative regional problem solving may affect LCDC action pertaining to the acknowledgment of land use plans and regulations in the participating planning jurisdictions. Indeed, acknowledgment may be granted under an RPS process where it otherwise would be impermissible. ORS 197.656(2) provides, in part:

"Following the procedures set forth in this subsection, the commission may acknowledge amendments to comprehensive plans and land use regulations, or new land use regulations, that do not fully comply with the rules of the commission that implement the statewide planning goals, without taking an exception, upon a determination that:

"(a)   The amendments or new provisions are based upon agreements reached by all local participants, the commission and other participating state agencies, in the collaborative regional problem-solving process;

"(b)   The   regional   problem-solving   process   has included agreement among the participants on: [there follows a list of specific planning requirements]."

The record shows that Polk County participated in a seven-year regional problem solving process with Yamhill County and other jurisdictions. The RPS was intended to address issues relating to growth in Grande Ronde, Valley Junction, and Willamina. Willamina is an incorporated city located in Yamhill County, and Grande Ronde and Valley Junction are unincorporated communities in Polk County. All three communities are close to the boundary between Polk and Yamhill counties. In fact, Willamina's urban growth boundary extends into Polk County.

Yamhill County participated in the process until June 2003, when it withdrew from active participation. Yamhill County apparently believed that its participation was not

necessary because its existing comprehensive plan and regulations adequately addressed regional problems within its jurisdiction. As a result, Yamhill County did not enter into a regional agreement with Polk County and other jurisdictions. Willamina also withdrew from the RPS process before an agreement could be reached. Polk County sought to continue with the process after Yamhill County withdrew so that it could obtain an exemption from LCDC rules under ORS 197.656(2) implementing Goal 3.

In its order, LCDC concluded that Yamhill County's decision to withdraw from the process meant that an agreement under ORS 197.656(2)(a) had not been reached by all local participants. As a result, LCDC terminated the RPS process. As a further consequence, LCDC concluded that its order on periodic review of Polk County's performance under the work task would not include application of the regional problem solving statutes. The order stated, in part:

> "This means that Polk County's comprehensive plan and land use regulation amendments will require further amendments to comply with administrative rules. [LCDC's] ability to waive certain rule provisions using regional problem solving is not currently an option since Yamhill County decided not to participate further in the RPS process with Polk County. The conversion of agricultural or forest lands to residential, commercial or industrial uses outside of RPS process requires an exception to the statewide planing goals pursuant to OAR 660, Division 4."

(Footnote omitted.)

Polk County construes ORS 197.654 to mean that the RPS process provides local governments with an "opportunity to participate" but does not require that all participants in the process remain active from beginning to end. According to Polk County, a participant's withdrawal should have no effect on remaining jurisdictions' continued participation in the process and the latter jurisdictions' eligibility under ORS 197.656(2) for a possible exemption from otherwise applicable statewide planning goals for certain lands within those jurisdictions.

The difficulty with that argument is that it overlooks ORS 197.656(2)(a), which provides that "[t]he amendments

or new provisions [to be submitted for acknowledgment] are based upon agreements reached by *all* local participants, the commission and other participating state agencies, in the collaborative regional problem-solving process[.]" (Emphasis added.) In this case, the planning problems for which the RPS was convened inextricably involved Yamhill County. When that jurisdiction withdrew from the process, the collaborative portion of the RPS effort ended and, with it, LCDC's authority under ORS 197.656(2) to "acknowledge amendments to comprehensive plans and land use regulations, or new land use regulations, that do not fully comply with the rules of the commission * * *."

We need not decide whether, as Polk County asserts, the reference in ORS 197.656(2) to "all local participants, the commission and other participating state agencies" could be construed to mean only those participants that are necessary or critical to an RPS process. LCDC's order states that its "ability to waive certain rule provisions using regional problem solving is not currently an option since Yamhill County decided not to participate further in the RPS process with Polk County." As a result, the proposal adopted by Polk County is not the product of an agreement aimed at resolving the problems that were identified for regional problem solving. *See* ORS 197.656(2)(b). Accordingly, LCDC did not err in concluding that the RPS process was no longer available as a means of complying with Polk County's periodic ordinance review obligations.

Affirmed on Polk County's petition; 1000 Friends of Oregon's petition dismissed.